IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 19-01303-jw |
| | ) | Chapter 13 |
| Helen Marie Rizzo, | ) | |
| | ) | **NOTICE OF MOTION FOR** |
| Debtor. | ) | **RELIEF FROM AUTOMATIC** |
| | ) | **STAY (11 U.S.C. §362)** |

TO:    DEBTOR, TRUSTEE, AND THOSE NAMED IN THE ATTACHED MOTION

PLEASE TAKE NOTICE THAT a hearing will be held on the attached Motion on:
    Date:  June 20, 2019
    Time:  11:00 a.m.
    Place: <u>145 King Street, Room 225, Charleston, South Carolina 29401</u>

Within fourteen (14) days after service of the attached Motion, the Notice of Motion, the Movant's Certification of Facts, any party objecting to the relief sought shall:

    (1) File with the clerk a written objection to the 11 U.S.C. §362 Motion;

    (2) File with the clerk a Certification of Facts;

    (3) Serve on the Movant items 1 and 2 above at the address shown below; and

    (4) File a certificate of such service with the clerk.

If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the court.

_____
F. TRUETT NETTLES, II
District Court ID No. 2520
Finkel Law Firm LLC
Post Office Box 41489
Charleston, South Carolina 29423
(843) 577-5460
tnettles@finkellaw.com
May 13, 2019

_____
MAGALIE A. CREECH
District Court ID No. 10871
Finkel Law Firm LLC
Post Office Box 41489
Charleston, South Carolina 29423
(843) 577-5460
mcreech@finkellaw.com
May 13, 2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:                                    )        Case No.  19-01303-jw
                                          )        Chapter 13
Helen Marie Rizzo,                        )
                                          )
         Debtor.                          )
_____)

## MOTION TO MODIFY STAY

Olivia Austin and Michelle Dinatale, as Co-Executors for the Estate of Albert Robert Scansaroli ("Movant") moves the Court pursuant to 11 U.S.C. Section 362(d)(1) for modification of the automatic stay issued in this case and represents as follows:

1.      The above-referenced Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on March 5, 2019.

2.      Debtor's Plan filed on March 5, 2019 lists Digital Federal Credit Union as a secured creditor with a mortgage against Debtor's residence. Debtor's plan states she is current on this claim. Debtor does not request valuation of any undersecured claims, seek lien avoidance, surrender any collateral or list any other secured claims excluded from 11 U.S.C. § 506 in the plan. Debtor proposes 100% payment of unsecured claims not separately classified.

3.      Debtor's Schedule A/B, part 32, states she claims an interest in the Estate of Albert Scansaroli in an unknown amount.

4.      Debtor's Schedule A/B, part 32, states she possesses a financial asset in the amount of $136,572.52 held in a trust escrow account of Debtor's attorney Olivetti, McCray and Withdraw, LLC.

5.      Movant was awarded a Preliminary Injunction against Debtor in an action pending in the Court of Common Pleas for Berkeley County, South Carolina. *See* Exhibit A, Order Granting Preliminary Injunction. Movant's state court complaint alleges that Debtor wrongfully converted $250,000.00 ("Property") of Movant's funds to her own use. Movant was awarded injunctive relief against Debtor, pursuant to which a constructive trust was imposed

upon $136,344.36 of the $250,000.00, which is currently held in the escrow trust account of Debtor's attorney in the state court litigation. *See* Exhibit B, Trust Account Ledger.

6.    Movant filed a Proof of Claim on April 19, 2019 setting forth its secured interest in the amount of $136,344.36 and unsecured interest in the amount of. Debtor has not objected to Movant's Proof of Claim.

7.    Debtor's plan is devoid of any treatment or mention of Movant's claim, and her schedules fail to include Movant as either a secured or unsecured creditor.

8.    The Berkeley County Court of Common Pleas has already determined that Movant possesses an interest in the $136,344.36 held in trust, which is secured by the constructive trust awarded by the Court; yet, Debtor seeks to misrepresent the nature of her interest in these funds, if any, in an apparent attempt to obtain a discharge of this debt to which she is not entitled under applicable law. Debtor fails to include Movant as either a secured or unsecured creditor, makes no provisions for her proposed treatment of the funds held in escrow, and does not propose to treat Movant's claim in any fashion. As a result, Movant is suffering irreparable harm and injury and cause exists for modification of the automatic stay.

9.    The Property is not necessary for the reorganization of Debtor's estate because she does not propose to use it for repayment of her one unsecured claim.

10.   Movant asserts that the automatic stay should be modified to permit the parties to continue the proceedings in state court and obtain a final adjudication declaring the rights and interest of the parties in the Property.

11.   Furthermore, Movant asserts that these factual circumstances warrant abstention pursuant to 28 U.S.C. § 1334(c)(1)-(2) because the state court action has already been commenced and the appropriate disposition of the Property can be timely adjudicated if the stay is modified to permit the resumption of the proceedings. Abstention would also be in the best interest of Debtor, Movant, and any other creditors of Debtor pursuant to 11 U.S.C. § 305(a)(1).

Movant seeks abstention under 28 U.S.C. § 1334(c)(1)-(2) and suspension of Debtor's case under 11 U.S.C. § 305(a)(1) as grounds for alternative relief herein.

12.    Movant agrees to waive any claim that may arise under 11 U.S.C. Section 503(b) or Section 507(b).

13.    Movant requests that F.R.B.P. 4001(a)(3) not be applicable in this matter and that Movant be able to immediately enforce and implement any Order modifying stay.

WHEREFORE, pursuant to 11 U.S.C. Section 362(d)(1), Movant hereby moves for an Order modifying the automatic stay to permit the Movant to seek their remedies in State Court regarding the Property, and for legal fees and expenses for bringing this action, and that F.R.B.P. 4001(a)(3) be waived and not be applicable to this Motion to Modify Stay so as to allow Movant to immediately enforce and implement an Order upon entry of an Order associated with this Motion.    Alternatively, Movant seeks abstention under 28 U.S.C. § 1334(c)(1)-(2) and suspension of Debtor's case under 11 U.S.C. § 305(a)(1).


F. TRUETT NETTLES, II
District Court ID No. 2520
Finkel Law Firm LLC
Post Office Box 41489
Charleston, South Carolina 29423
(843) 577-5460
tnettles@finkellaw.com
May 13, 2019

MAGALIE A. CREECH
District Court ID No. 10871
Finkel Law Firm LLC
Post Office Box 41489
Charleston, South Carolina 29423
(843) 577-5460
mcreech@finkellaw.com
May 13, 2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | Case No.  19-01303-jw |
| | ) | Chapter 13 |
| Helen Marie Rizzo, | ) | |
| | ) | **CERTIFICATION OF FACTS** |
| Debtor. | ) | |
| | ) | |

In the above-entitled case, in which relief is sought by Olivia Austin and Michelle Dinatale, as Co-Executors for the Estate of Albert Robert Scansaroli ("Movant") from the automatic stay provided by 11 U.S.C. §362, I hereby certify to the best of my knowledge the following:

1. Nature of Movant's interest:  Movant was awarded a constructive trust by the Berkeley County Court of Common Pleas upon $136,344.36 which Debtor mischaracterizes as a financial asset.  Movant possesses an unsecured claim in the amount of $113,655.64, and together with the $136,344.36 claims an interest in the total amount of $250,000.00 (the "Property").

2. Brief Description of Security Agreement or Authority under which Interest Arises:  *See* Exhibit A, Order Granting Preliminary Injunction and Exhibit B, Trust Account Ledger.

3. Description of Property Encumbered by Stay:  $136,344.36.

4. Basis for Relief (property not necessary for reorganization, debtor has no equity, property not property of estate, etc.; include applicable subsection of 11 U.S.C. §362):  11 U.S.C. §362(d)(1); Cause, lack of adequate protection. Further, the Property is not necessary for reorganization because Debtor does not propose to use it for the payment of her creditor(s).

5. Prior Adjudication by Other Courts, copy attached (Decree of Foreclosure, Order for Possession, Levy of Execution, etc., if applicable):  *See* Exhibit A, Order Granting Preliminary Injunction.

6. Valuation of Property: List the value placed upon the collateral by the party filing this certification.  Include the source of each value.  If an appraisal, (ie: tax appraisal, Blue Book, formal appraisal), include the following information regarding each appraisal: the date and type of appraisal, the appraised value and the name and address of the appraiser.

   | | |
   |---|---|
   | Fair Market Value | $N/A |
   | Liens (mortgages)(-) | $N/A* |
   | Equity Before Exemption | $N/A |
   | Debtor's Exemption (-) | $N/A |
   | Net Equity | $N/A* |
   | Source/Basis of Value: | Schedule of Debtor(s) |

7.      Amount of Debtor's Estimated Equity (using figures from paragraph 6, supra):
        N/A.  Debtor does not own the subject property.

8.      Month and Year in which first direct post-petition payment came due to Movant
        (if applicable). N/A.

9.      (a)     For Movant/Lienholder (if applicable):  List or attach a list of all post-
                petition  payments received directly from debtor(s), clearly showing date
                received, amount, and month and year for which each such payment was
                applied.

                No post-petition payments have been received.

        (b)     For Objecting Party (if applicable):  List or attach a list of all post-petition
                payments included in the Movant's list from (a) above which objecting
                party disputes as having been made.    Attach written proof of such
                payment(s) or a statement as to why such proof is not available at the time
                of filing this objection.

10.     Month and year for which post-petition account or debtor(s) is due as of the Date
        of this Motion.  N/A



_____
F. TRUETT NETTLES, II
District Court ID No. 2520
Finkel Law Firm LLC
Post Office Box 41489
Charleston, South Carolina 29423
(843) 577-5460
tnettles@finkellaw.com
May 13, 2019

_____
MAGALIE A. CREECH
District Court ID No. 10871
Finkel Law Firm LLC
Post Office Box 41489
Charleston, South Carolina 29423
(843) 577-5460
mcreech@finkellaw.com
May 13, 2019

EXHIBIT
A

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

STATE OF SOUTH CAROLINA    )    IN THE CIRCUIT COURT
                      )    FOURTEENTH JUDICIAL CIRCUIT
COUNTY OF BEAUFORT        )    CASE NO. 2018-CP-07-01457

OLIVIA AUSTIN, as General Guardian for )
Albert Robert Scansaroli, an incapacitated )
person,                         )    **ORDER GRANTING**
          Plaintiff,      )    **PRELIMINARY INJUNCTION**
                      )
    -vs-                 )
                      )
HELEN RIZZO,            )
          Defendant.    )
_____)

        This matter came before this Court for a hearing on September 25, 2018, involving Plaintiff

Olivia Austin's ("Plaintiff") Motion for Temporary Restraining Order and/or Preliminary Injunction

against Defendant Helen Rizzo ("Defendant") pursuant to S.C. R Civ. Pro. 65.  Present at the

hearing were Daniel F. Blanchard, III, Esquire, counsel for the Plaintiff; Catherine West Olivetti,

Esquire and Jill R. Kroamer, Esquire, counsel for the Defendant; and the Defendant.

        By Verified Complaint filed on July 18, 2018, Plaintiff, as General Guardian for Albert

Robert Scansaroli ("Albert"), an incapacitated person, commenced this action against the Defendant

to recover funds that Defendant withdrew from a joint bank account held in Albert's and Defendant's

names as well as other personal property belonging to Albert that are in the Defendant's possession.

The Verified Complaint asserts causes of action for (1) Declaratory Judgment; (2) Conversion; (3)

Constructive Trust; (4) Temporary Restraining Order/Preliminary and Permanent Injunction; and (5)

Recovery of Attorneys' Fees and Costs.

        On August 1, 2018, Plaintiff also filed a Motion for Temporary Restraining Order and/or

Preliminary Injunction (hereinafter "Motion").  On August 16, 2018, Defendant filed an Answer &

Counterclaims as well as a Memorandum in Opposition to the Motion.

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

After reviewing the pleadings, exhibits, affidavits, and documents on record and carefully considering the arguments of counsel for the parties, I find that the motion should be granted and hereby make the following findings of fact and/or conclusions of law:

## FINDINGS OF FACT

1.     Albert is 88 years old and suffers from dementia and related memory impairment. He is not mentally competent to make decisions regarding his own care and financial affairs and is unable to manage his property and estate. He currently resides in the memory care unit of Cardinals of North Hills in Raleigh, North Carolina. See Verified Compl. ¶ 2.

2.     Plaintiff is Albert's adult daughter. Albert has four, living adult children (Plaintiff, Aaron Scansaroli, Gary Scansaroli, and Brian Scansaoli). See Verified Compl. ¶ 3. The children are from his marriage to his first wife (Bamby). They divorced after twenty-one years of marriage. Albert subsequently married Carol, who died in 2006. They had no children together.

3.     Because of Albert's dementia and diminished mental capacity at the time, on April 10, 2018, the Probate Court for Wake County, Superior Court Division, State of North Carolina, deemed Albert to be incompetent to make decisions regarding his own care or personal affairs and appointed Plaintiff as his General Guardian. See Verified Compl. ¶ 4 & Exh. A.[1] Plaintiff subsequently registered her appointment as General Guardian with the Beaufort County Probate Court in accordance with S.C. CODE ANN. § 62-5-716 of the South Carolina Adult Guardianship and Protective Proceedings Jurisdiction Act and also recorded the Certificate of Registration with the Beaufort County Register of Deeds. See Verified Compl. ¶¶ 5-6 & Exhs. B & C.

---

[1] Prior to this Court appointment, Albert had appointed Plaintiff as his attorney-in-fact by virtue of a General Power of Attorney dated September 27, 2012, and recorded in the Register of Deeds for Wake County, State of North Carolina, on December 12, 2017. See Verified Compl. ¶ 7 & Exh. D.

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

4.      Defendant resides in Hilton Head Island, South Carolina. See Verified Compl. ¶ 10; Answer ¶ 8. Defendant met Albert in 2007 and had a relationship with him Albert for a period of years, although the exact nature of the relationship is in dispute.[2]

5.      By virtue of deeds dated July 14, 2017, and August 4, 2017, Albert sold several parcels of real estate located in Stow, Massachusetts, that he owned and held in his individual name. See Deeds. In late July and early August of 2017, using proceeds that Albert had received from the sale of these properties, Albert made deposits totaling $811,727.27 into a savings account (ending with ****8014) that was opened in his name at Bank of America. See Trans. History Acct. 8014; Deeds; Verified Compl. ¶ 12. On the signature care for the account, Albert is listed as the sole owner of the account and he alone is listed as the person with a reportable interest in the account. See Signature Card Acct. 8014. This account was opened at Bank of America's branch office in Maynard, Massachusetts. See Verified Compl. ¶ 13.

6.      There is no evidence that Defendant contributed any of the funds deposited into Account ****8014. The only evidence of contributions made to the account are from Albert. See Verified Compl. ¶ 14; Trans. History Acct. 8014.

7.      On August 22, 2017, $500,000.00 was transferred from Account ****8014 to a new savings account ending with ****8545 that was opened with Bank of America on that same date.

---

[2] Plaintiff's Verified Complaint alleges that Defendant was Albert's "girlfriend." See Verified Compl. ¶ 11. Additionally, in deeds that Albert signed on July 14, 2017, and August 4, 2017, he refers to himself as being "an unmarried man." Albert's medical record dated December 11, 2017, states he has a "girlfriend," but does not mention that he has a wife.

In her Answer filed on August 16, 2018, Defendant alleges that she was Albert's girlfriend "until 2017," at which time she became his wife. See Answer ¶ 9. Defendant apparently claims she became Albert's common-law wife in 2017. It is unnecessary for this Court to make findings as to the existence of any marital relationship between Albert and Defendant. Even assuming *arguendo* that Albert and Defendant are married, it would not change the analysis or result set forth herein.

3

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

See Verified Compl. ¶ 15; Trans. History Acct. 8014; Trans. History Acct. 8545.

8.    Albert and Defendant are listed as joint owners of this new savings account (Account ****8545) with right of survivorship. See Verified Compl. ¶ 16; Signature Card Acct. 8545. Albert alone is listed as the person with a reportable interest in the account. Id. This new account was opened at Bank of America's branch office located on Hilton Head Island, South Carolina. Id.

9.    There is no evidence that Defendant contributed any of the funds deposited into Account ****8545. The only evidence of contributions made to the account are from Albert. See Verified Compl. ¶ 17; Trans. History Acct. 8545.

10.    On November 2, 2017, Defendant personally signed for and cashed a counter check or bank check in the amount of $250,000.00 made payable to herself that was drawn on the new savings account (Account ****8545). See Verified Compl. ¶ 18; Bank Check dated 11/2/17. Albert did not sign the check for the withdrawal. Based on the date and time stamp on the backside of the check, Defendant made this withdrawal from Account ****8545 while Albert was in the hospital (or hours after Albert had been discharged from the hospital and was on his way to North Carolina with his children) and without notifying Albert or any of Albert's adult children that she was withdrawing the money from the account. See Verified Compl. ¶ 19. Albert has resided in North Carolina ever since November 2, 2017. Id.

11.    After discovering Defendant's withdrawal of the funds from Account ****8545, Plaintiff has made demand on Albert's behalf to Defendant that she return the $250,000.00 to Albert, but Defendant has thus far failed or refused to return the funds to him. See Verified Compl. ¶ 21 & Exh. E. When Defendant refused to return the monies, Plaintiff commenced this action against Defendant and also filed the instant motion for a preliminary injunction.

4

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

12.    In Defendant's response to Plaintiff's motion, she concedes that she withdrew the

$250,000.00 from Account ****8545 on November 2, 2017 prior to leaving Hilton Head to be with

her daughter who was ill. See Def's Memo. p.2 ("Prior to her departure from Hilton Head Island,

Defendant withdrew funds from the joint account."). However, she alleges that Albert intended to

give the $250,000.00 to her. At the hearing on Plaintiff's motion, Defendant's counsel argued that

Defendant is entitled to keep the $250,000.00 which she withdrew from Account ****8545 based on

the provisions of the account agreement for the account. Defendant's counsel also asserted that

Albert had verbally told Defendant that she could have some of the proceeds from his sale of the

Massachusetts properties because she had assisted him with zoning issues. Defendant's counsel

further argued that an injunction would be too harsh on Defendant because she has been using the

$250,000.00 that she withdrew from the account to pay her personal bills and expenses, although she

conceded that Defendant receives income from other sources.

13.    Plaintiff argues that South Carolina law on joint accounts is clear that Defendant was

not entitled to withdraw any of the funds in Account ****8545 because she did not contribute any of

the funds to that account. To the extent that Defendant alleges that Albert intended to gift the

$250,000.00 to her, Plaintiff also asserts that Albert was unable to consent to or approve of

Defendant's withdrawal of the $250,000.00 from Account ****8545 on November 2, 2017 because

of his dementia and diminished mental capacity at the time. See Verified Compl. ¶ 19. Plaintiff also

maintains that Defendant has not presented "clear and convincing" evidence that Albert intended to

make a gift of $250,000.00 to her. At the hearing on the instant motion, Plaintiff's counsel provided

the Court with an audio recording of a conversation that took place on December 17, 2017, between

Albert, Plaintiff, and Gary (Albert's son). See Olivia Austin Aff. ¶ 3 & Exh. A. In the conversation,

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP070701457

which occurred only forty-five days after Defendant withdrew the $250,000.00 from Account ****8545, Albert stated he did not give any money from the sale of the Massachusetts properties to Defendant, he had no recollection of giving $250,000.00 to Defendant, and he had no awareness of Defendant withdrawing $250,000.00 from the Bank of America account.

### CONCLUSIONS OF LAW

14.    "Actions seeking relief by injunction are equitable in nature." City of Myrtle Beach v. Juel P. Corp., 344 S.C. 43, 522 S.E.2d 153 (Ct. App. 1999), rev'd other grounds, 543 S.E.2d 538 (2001). Whether a temporary injunction should be granted rests in the sound discretion of the judge to whom the application is addressed. Seabrook v. Carolina Power & Light Co., 159 S.C. 1, 156 S.E. 1 (1930); Brandt v. Gooding, 630 S.E.2d 259 (S.C. 2006).

15.    A temporary restraining order or preliminary injunction may be sought upon filing of the summons and complaint by submitting an affidavit or verified complaint showing, with specific facts, that the applicant will sustain immediate and irreparable injury, loss, or damage if relief is not granted. S.C. R. Civ. Pro. 65(b). A verified complaint is the equivalent of an affidavit. Dawkins v. Fields, 354 S.C. 58, 580 S.E.2d 433, 437-38 (2003); Carmichael v. Oden, 2009 WL 9524614, *5 (S.C. Ct. App. 2009).

16.    The purpose of an injunction is to preserve the *status quo* during litigation in order to prevent irreparable injury to the requesting party and to preserve the ability of the court to render complete relief. County Council of Charleston v. Felkel, 244 S.C. 480, 137 S.E.2d 577, 578 (1964) ("The sole object of a temporary injunction is to preserve the subject of controversy in the condition which it is at the time of the Order until opportunity is offered for full and deliberate investigation and to preserve the existing status during litigation."); see also JAMES F. FLANAGAN, SOUTH

6

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

CAROLINA CIVIL PROCEDURE 511 (2nd ed., 1996) ("A temporary injunction preserves the *status quo* pending the completion of the case."). An injunction is appropriate to preserve the *status quo* so that a party can enforce a disputed legal right. Seaboard Air Line Ry. v. Atlantic Coast Line R., 71 S.E. 39 (S.C. 1911).

17.    Under South Carolina law, a party seeking to obtain injunctive relief generally must demonstrate that (1) it would suffer irreparable harm if the injunction is not granted: (2) it will likely succeed on the merits of the litigation; and (3) there is an inadequate remedy at law. FOC Lawshe Ltd. Partnership v. International Paper Co., 352 S.C. 408, 574 S.E.2d 228 (Ct. App. 2002). Our state Supreme Court has clarified that there is no additional requirement that the trial judge must "balance the equities" before issuing an injunction. Poynter Investments, Inc. v. Century Builders of Piedmont, Inc., 387 S.C. 583, 694 S.E.2d 15, 17 (2010).

18.    Under South Carolina law, "[i]rreparable injury means that the injunction is reasonably necessary to protect the rights of the plaintiff pending the litigation." FLANAGAN, SOUTH CAROLINA CIVIL PROCEDURE at 508 (citing cases). South Carolina law has long recognized that an injunction is the appropriate remedy to abate an alleged waste of property or assets while ownership of the same property or assets is being litigated. Kinsler v. Clarke, 1837 WL 1551 (S.C. Ct. App. 1837); Grosshuesch v. Cramer, 367 S.C. 1, 623 S.E.2d 833 (2005); Felkel, 137 S.E.2d at 578. In Grosshuesch, our state Supreme Court observed that "the quintessential hallmark of an injunction" is the "preservation of the property at issue until the matter has been adjudicated." 623 S.E.2d at 833.

19.    Additionally, courts hold that "even where a harm could be remedied by money damages at judgment, irreparable harm may still exist . . . where '[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

collected.'" Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984); see also

United States *ex rel.* Taxpayers Against Fraud v. Singer Co., 889 F.2d 1327, 1330 (4th Cir. 1989)

(noting injunction could be appropriate where the principal defendant was "insolvent" and its assets

were "in danger of dissolution and depletion."); Wellin v. Wellin, 2013 WL 6175829, *5 (D.S.C.

2013) (observing that "irreparable harm may exist where the moving party's business cannot survive

absent a preliminary injunction, or where damages may ultimately become unobtainable because the

defendant may become insolvent before a final judgment can be entered"); Hoxworth v. Blinder,

Robinson & Co., Inc., 903 F.2d 186, 206 (3d Cir.1990) (holding that "the unsatisfiability of a money

judgment can constitute irreparable injury"); Hughes Network Systems, Inc. v. InterDigital

Communications Corp., 17 F.3d 691, 694 (4th Cir. 1994).

20.    As for the requirement of showing a likelihood of success on the merits, a party

seeking an injunction is "not required to prove an absolute legal right when seeking a preliminary

injunction, but [she] must present a reasonable question as to the existence of such a right." AJG

Holdings, LLC v. Dunn, 382 S.C. 43, 674 S.E.2d 505, 509 (Ct. App. 2009); see also Williams v.

Jones & Amerman, 92 S.C. 342, 75 S.E. 705 (1912) ("This does not mean an absolute legal right or

certainty of success but rather that he has a fair question to raise as to the existence of such a right.").

Courts have broadly construed this element and a litigant is required to do little more than state a

cause of action or make a *prima facie* showing. County of Richland v. Simpkins, 348 S.C. 664, 560

S.E.2d 902 (Ct. App. 2002); Childs v. Columbia, 87 S.C. 566, 70 S.E. 296 (1911).

21.    "The determination of whether to grant an injunction should not be based on the

merits of the underlying case except insofar as the merits may assist the trial court in determining

whether a *prima facie* showing has been made." MailSource, L.L.C. v. M.A. Bailey & Assocs., 356

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

S.C. 363, 588 S.E.2d 635, 638 (Ct. App. 2003). "Once a *prima facie* showing has been made entitling the plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate termination of the case on the merits." Helsel v. City of N. Myrtle Beach, 307 S.C. 29, 413 S.E.2d 824, 826 (1992).

22.     Finally, "whether there is an adequate remedy at law for a wrong, [is a] question[] that [is] not decided by narrow and artificial rules." Kirk v. Clark, 191 S.C. 205, 4 S.E.2d 13, 15 (1939). "The adequacy of a legal remedy is a pragmatic determination based upon the certainty of fixing damages, the practicality of obtaining relief, and the efficiency of the legal remedy in the particular circumstances." FLANAGAN, SOUTH CAROLINA CIVIL PROCEDURE at 508. "[I]f the available legal remedy in a given case reduces itself to a matter of words, rather than to a matter of efficacy, because of its impracticability, or because the threatened acts may continue during the progress of an action at law, or because successive actions at law would be necessary to protect the plaintiff's rights, equity will hold that the existence of the legal remedy is not an obstacle to the exertion of the equitable power." Columbia Broadcasting Sys., Inc. v. Custom Recording Co., 258 S.C. 465, 189 S.E.2d 305, 312 (1972).

23.     Based on the record before it, this Court finds that Plaintiff has demonstrated (1) she would suffer irreparable harm if an injunction is not granted; (2) she will likely succeed on the merits of the litigation; and (3) there is an inadequate remedy at law. This Court further finds that a preliminary injunction is needed to preserve the *status quo* during this litigation in order to preserve this Court's ability to render complete relief and to protect Albert's rights in the funds.

24.     **Irreparable Harm**. This Court finds that Plaintiff will suffer irreparable harm if an injunction is not granted. Unless Defendant is enjoined from spending and using the $250,000.00

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

during the pendency of this litigation, Plaintiffs will suffer immediate and irreparable injury because the funds at issue will be dissipated and wasted. Plaintiff's claims include a cause of action seeking to impose a constructive trust over the funds which Defendant withdrew from the bank account. Plaintiff will sustain the loss of the funds if Defendant is not enjoined from using, spending, or disposing of the funds during the pendency of the action.

 25. Even though South Carolina law provides that the Defendant will be liable for damages once a trial on the merits is held, it will be difficult (if not impossible) to trace, locate, and recover the funds that Defendant will have improperly used and spent during the pendency of the litigation after those funds have already been used and spent. Because the funds are liquid, they are easily disposed of. Once these funds have been used, spent, transferred, disbursed, or disposed of, they will be beyond the Plaintiff's reach and potentially outside of the Court's immediate jurisdiction and are subject to partial or total transferring, hiding, depleting, spending and/or dissipation at Defendant's whim, to the Plaintiff's detriment.

 26. It is also highly likely that any damages award will be unrecoverable or unobtainable against Defendant because she may become insolvent or judgment proof before a final judgment can be entered. Defendant's counsel concedes that Defendant has been using the $250,000.00 to pay her personal bills and expenses. Other than a modest residence which is heavily mortgaged, Defendant has no other known assets of any significance. If an injunction is not granted, it is likely that the Defendant will be insolvent or judgment proof by the time a money judgment can be awarded at the conclusion of this litigation. A money judgment against Defendant will do Plaintiffs little good if Defendant is allowed to waste, spend, or dispose of the funds during the pendency of the case.

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

27.    **Likelihood of Success on Merits**. This Court also finds that Plaintiff has shown a

likelihood of success on the merits. Plaintiff certainly has raised a "reasonable question" or "fair

question" about Defendant's liability, thus she has made a *prima facie* showing entitling her to

injunctive relief. A *prima facie* showing has been made that Defendant was not entitled to withdraw

the $250,000.00 from Account ****8545.

28.    South Carolina is among the majority of states that have adopted UNIFORM PROBATE

CODE (UPC) §§ 6-103 and 6-104 involving multiple-party accounts. See S.C. CODE ANN. §§ 62-6-

201 & -202. "To bring uniformity to the law and to eliminate confusion caused by conflicting

decisions," the Uniform Probate Code in section 6-103 "provides a clear test to be applied when

determining the ownership of funds on deposit in a joint account during the lifetime of the parties."

Matter of Estate of Maxfield, 856 P.2d 1056, 1057 (Utah 1993).  Under § 6-103 of the UPC, which

South Carolina has codified at S.C. CODE ANN. § 62-6-201, if a bank account has multiple parties,

"[d]uring the lifetime of all parties, an account belongs to the parties in proportion to the net

contribution of each to the sums on deposit, unless there is clear and convincing evidence of a

different intent." S.C. CODE ANN. § 62-6-201(A) (emphasis added).[3]  This basically means that a

person owns the amount which he or she deposits and account-holders in joint bank accounts do not

intend to make a gift to the other account-holder when they make a deposit. They intend, rather, to

retain ownership of their money.

---

[3] The "net contribution" of a party is defined as "the sum of all deposits to an account made by or for
the party, less all payments from the account made to or for the party which have not been paid to or
applied to the use of another party and a proportionate share of any charges deducted from the
account, plus a proportionate share of any interest or dividends earned, whether or not included in the
current balance." S.C. CODE ANN. § 62-6-101(6).

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

29.    In contrast, under § 6-104 of the UPC, which South Carolina has codified at Section 62-6-202(a), the statute provides that "[e]xcept as otherwise provided in this subpart, <u>on death of a party</u> sums on deposit in a multiple-party account belong to the surviving party or parties." S.C. CODE ANN. § 62-6-202(a) (emphasis added). The "right of survivorship arising from the express terms of the account under Section 62-6-202 may be altered by clear and convincing evidence, including but not limited to express provisions in a will." <u>Id.</u> § 62-6-203(b).

30.    "Thus, [UPC § 6-103] sets out the ownership rights during the 'lifetime of all parties.'" <u>Johnston v. Sunwest Bank of Grant County</u>, 863 P.2d 1043, 1045 (N.M. 1993). "In contrast, [UPC § 6-104] sets out the ownership rights of the survivors to the remaining sums 'at the death of a party to a joint account.'" <u>Id.</u> The official comments to these two provisions explain as follows:

> **This section reflects the assumption that a person who deposits funds in an account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, the person usually intends no present change of beneficial ownership. . . .** The assumption that no present change or beneficial ownership is intended may be disproved by showing that a gift was intended. . . . It is important to note that the section is limited to ownership of an account while parties are alive. Section 62-6-202 prescribes what happens to beneficial ownership on the death of a party. . . . **The theory of these sections is that the basic relationship of the parties is that of individual ownership of values attributable to their respective deposits and withdrawals, and not equal and undivided ownership that would be an incident of joint tenancy.**

S.C. CODE ANN. § 62-6-201 cmt. (emphasis added).

31.    While the parties to a joint account are alive, the statutory presumption is that each party to the joint account is entitled to make withdrawals from the account only to the extent of that party's net contribution to the account, unless there is "clear and convincing evidence" that a gift was intended. "The mere fact that money is deposited in a joint bank account to the credit of the owner

12

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP070145

and another is not sufficient to show an intent to make a gift to the other." Rogers v. Rogers, 437

N.E.2d 92, 96 (Ind. Ct. App. 1982); see also State v. Campbell, 756 N.W.2d 263, 272 (Minn. Ct.

App. 2008) ("L.C. contributed all of the funds to the joint accounts, and respondent apparently

contributed nothing. Notwithstanding respondent's status as a joint account holder, those funds did

not belong to him personally during L.C.'s lifetime, absent evidence of a different intent."). "There

must be intent to give and deliver and an irrevocable surrender of control of the funds." Rogers, 437

N.E.2d at 96.

33.     "The provision of the statute, including the burden of proof imposed on the

nondepositing joint owner, is not altered or changed in any way when the joint depositors are married

to each other." Maxfield, 856 P.2d at 1057; Noble v. Noble, 546 P.2d 358, 362 (Ariz. Ct. App.

1976). Instead, "[t]he funds retain their separate character unless a gift is proved." Id.

33.     "Joint accounts are sometimes referred to as a 'poor man's will.'" Maxfield, 856 P.2d

at 1058-59. "This is because under section 6–104 of the Uniform Probate Code, 'all sums remaining

on deposit at the death of a party to a joint account belong to the surviving party or parties as against

the estate of the decedent unless there is a clear and convincing evidence of a different intention at

the time the account is created.'" Id. "Thus, joint accounts provide a simple and inexpensive method

of passing the funds in the account from a deceased joint owner to the surviving joint owner,

completely avoiding the necessity of any probate proceedings." Id.

34.     Importantly, "the right of survivorship which attaches unless negated by the form of

the account really is a right to the values theretofore owned by another **which the survivor receives**

**for the first time at the death of the owner.**" Id. at 1059. "That is to say, the account operates as a

valid disposition **at death rather than as a present joint tenancy.**" Id. (emphasis added); see also

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

Mulato v. Mulato, 705 So.2d 57, 61 (Fla. Ct. App. 1997) ("[T]he presumption that a gift was intended by the depositor of funds into a joint account **applies only to the funds remaining at the depositor's death**." (emphasis added)); In re Estate of Combee, 601 So.2d 1165, 1167 (Fla. 1992) ("The presumed intent is not an intent to make an *inter vivos* gift but rather an intent that the remaining account holders receive the funds remaining in the account when the depositor dies.").

35.    Of course, S.C. CODE ANN. § 62-6-202(a) is inapplicable to the present case because both Albert and Defendant were alive on November 2, 2017 when Defendant withdrew the funds from Account ****8545. The fact that Defendant would become the owner of the account upon Albert's death has no bearing on the ownership of the funds during Albert's lifetime. Instead, during Albert's lifetime, Defendant merely had an expectation of a right to survivorship to the funds remaining in the account at Albert's death. Johnston, 863 P.2d at 1045 ("Johnston had no ownership interest at the time of the transfer of funds by Grover. At most she had a mere expectation of a right of survivorship.").

36.    Under case law applying these provisions, if a party to the joint account withdraws more than that his or her net contribution during the other party's lifetime, the other party has a claim against the withdrawing party. See, e.g., Vaughn v. Bernhardt, 345 S.C. 196, 199, 547 S.E.2d 869, 870 (2001); Kemp v. Rawlings, 358 S.C. 28, 37, 594 S.E.2d 845, 850 (2004); see also Rogers, 437 N.E.2d at 96 ("One of two joint tenants of money deposited in a joint bank account cannot, by withdrawing the money without the other's knowledge and consent, divest the other of his joint ownership therein."); Enright v. Lehmann, 735 N.W.2d 326, 335 (Minn. 2007) ("Under the [Multi-Party Accounts Act], a joint account holder does not, without evidence of a contrary intent, own funds contributed by another party to the account. Even where a joint account holder has the power

14

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

to withdraw funds he did not contribute, he exercises dominion over those funds only with the consent of the contributing party, who can bring an action to recover wrongfully withdrawn funds.").

37.     For example, in <u>Vaughn</u>, our state Supreme Court held that all of the funds in a joint account rightfully belonged to the estate of the contributing account holder because the non-contributing account holder had withdrawn the funds a few days before the contributing account holder's death (*i.e.*, during her lifetime) and had deposited the funds into a new account titled solely in the non-contributing account holder's name. <u>See</u> <u>Vaughn</u>, 345 S.C. at 199, 547 S.E.2d at 870. In rejecting the non-contributing account holder's argument that he was entitled to withdraw the funds based on the predecessor to § 62-6-202(a), the Supreme Court held that "all the funds from the Joint Accounts belonged to the Decedent during her lifetime because she was the sole contributor." <u>Id.</u> The Court affirmed the Probate Court's order requiring the non-contributing account holder to return the funds to the contributing account holder's estate.

38.     In the case at bar, during the lifetimes of Albert and Defendant, Defendant was only authorized to make withdrawals from Account ****8545 to the extent of her "net contributions" to the account. Because Defendant has not shown that she made any contributions to Account ****8545, she was not entitled to make any withdrawals from the account. Plaintiff has made a *prima facie* showing that the funds in the account rightfully belong to Albert as a matter of law and the Defendant must return the $250,000.00 which she withdrew from the account.

39.     Defendant's counsel argued that Albert intended to gift the $250,000.00 to the Defendant. However, Defendant has failed to present any evidence—much less "clear and convincing evidence"—of any such intent by Albert. Defendant failed to present any affidavit or other testimony to support her claims. Instead, she based her position solely on her counsel's

15

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

arguments set forth in an opposition memorandum and stated at the hearing. Settled law holds that arguments of counsel are not evidence. Bowers v. Bowers, 304 S.C. 65, 68, 403 S.E.2d 127, 129 (Ct. App. 1991) ("Arguments of counsel are also not evidence."); McManus v. Bank of Greenwood, 171 S.C. 84, 89, 171 S.E. 473, 475 (1933) ("This court has repeatedly held that statements of fact appearing only in argument of counsel will not be considered."); Gilmore v. Ivey, 290 S.C. 53, 348 S.E.2d 180 (Ct. App. 1986) (trial court properly disregarded the statements of counsel that he claimed reflected testimony appearing in depositions not otherwise entered into evidence); S.C. Dept. of Transp. v. Thompson, 357 S.C. 101, 105, 590 S.E.2d 511, 513 (Ct. App. 2003) ("[a]rguments made by counsel are not evidence"); McClurg v. Deaton, 395 S.C. 85, 87, 716 S.E.2d 887, 888 n.1 (2011) ("Memorandum in support of a motion is not evidence.").

40.    Defendant further argued that she is entitled to keep the $250,000.00 because the bank's account agreement supposedly gives her the right to withdraw funds from Account ****8545. However, this argument erroneously conflates ownership of the funds in the account with the right to make withdrawals from the account. In Shourek v. Stirling, 621 N.E.2d 1107 (Ind. 1993), which our Supreme Court cited with approval in Vaughn, the Indiana Supreme Court specifically rejected this same argument. In Shourek, the defendant argued that the contributing account holder had intended to transfer a present interest in the joint accounts to her late husband's niece because of the authority that was given to the niece under the bank's deposit agreements to make withdrawals from the account. However, the Shourek Court held that "[t]he right to withdraw and the right of ownership, however, are separate and distinct rights," "[t]he deposit agreements establish a party's right to withdraw funds and govern the relationship between the bank and the joint tenants," and "[a]lthough the deposit agreements clearly gave [the niece] the right to withdraw funds from the account, the

16

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

deposit agreements alone do not create an ownership right in the funds that were withdrawn."
Shourek, 621 N.E.2d at 1110; see also Slaughter v. Ohio Operating Engineers Fed. Credit Union,
831 N.E.2d 1034, 1037 (Ohio Ct. App. 2005) ("[A]ppellant appears to claim that she was entitled to
transfer these funds by virtue of [a provision in the Credit Union's account agreement], which
governs the control of multiple-party accounts and provides that '[a]ny owner may withdraw all
funds [and] transfer . . . all or any part of the shares without the consent of the other owner(s).'
Because she is a joint owner of this account, appellant contends that the Credit Union erred when it
reversed the transaction without taking into account this provision of the Agreement. This provision
in the Agreement, however, does not take precedence over the law governing ownership of joint-and-
survivorship accounts *during the lifetime* of the owners. As stated previously, the evidence appended
to the parties' briefs does not indicate that appellant contributed any funds to account number 5156.
She therefore has no ownership interest in this account and, despite the Agreement's provision
regarding multiple accounts, she was not entitled to transfer funds belonging to Ramon to an account
owned by her and her daughter.").

41.    **Inadequacy of Remedy at Law**. Finally, this Court finds that Plaintiff has no
adequate remedy at law for the harm or damage done or threatened to be done by the Defendant.

42.    The Grosshuesch case is illustrative. In that case, an action was brought on behalf of
an elderly couple suffering from dementia (the Breedloves) against an employee of their bank
(Cramer) who eventually became the Breedloves' caregiver and who was a trustee assisting in the
management of different trusts in which the Breedloves had assets. Cramer transferred substantial
assets (including funds from an investment account) belonging to the Breedloves to herself and her
husband. The Breedloves (through their guardians) sought a preliminary injunction preventing

17

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

Cramer from exercising any control over the Breedloves' trusts and assets. On appeal, our state

Supreme Court issued a preliminary injunction freezing the investment account as well as "any other

accounts, assets, and personal property purchased or acquired with the [monies] obtained from the

Breedloves."

The Supreme Court reversed the trial court's ruling that an adequate remedy at law existed in

the form of pre-judgment attachment. The Court held:

> The trial court incorrectly applied [Scratch Golf Co. v. Dunes West Residential Golf
> Properties, Inc., 361 S.C. 117, 603 S.E.2d 905 (2004)] to the instant case. Scratch
> Golf was an action at law, and the attachment issue dealt only with preserving
> another's assets for satisfaction of a potential judgment. **This case is an equitable
> action in which the assets sought to be preserved, specifically $2 million worth
> of accounts, monies, and personal property, are the subject of the instant
> dispute.** As distinguished from attachment, by which the court takes jurisdiction
> over the defendant's property "as a security for such judgment as a plaintiff may
> recover," § 15-19-10, **this case involves the quintessential hallmark of an
> injunction: preservation of the property at issue until the matter has been
> adjudicated.**

Grosshuesch, 623 S.E.2d at 833 (emphasis added).

43.    In the present case, as in Grosshuesch, the purpose of Plaintiff's motion is to preserve

the funds (or remaining funds) that were withdrawn from Account ****8545 until the merits of this

litigation can be finally adjudicated. When ownership of property is the subject of the lawsuit, the

"quintessential hallmark" of an injunction is to preserve the property at issue until the matter has

been adjudicated. In this case, Plaintiff has made a *prima facie* showing that Defendant withdrew the

funds from the account without the right to do so. Unless an injunction is issued, Defendant will

continue to spend and use the funds during the pendency of this action. The funds will continue to

be depleted unless an injunction is granted. Even if Plaintiffs obtains a money judgment against

Defendant at the end of this case, it is likely she will never be able to fully recover the funds if

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

Defendants is allowed to spend, use, and dispose of the funds during the pendency of the action. Plaintiff has no adequate remedy at law for the harm or damage done or threatened to be done by the Defendant.

44.    **Bond**. For the reasons set forth above, a preliminary injunction is warranted. According to S.C. R. Civ. Pro. 65(c), a preliminary injunction shall not issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

45.    Defendant has not requested the posting of a specific bond amount. Defendant has offered no evidence to show any damages she would suffer in the event it is determined that this preliminary injunction was wrongfully entered. This Court finds that any such damages would be minimal. If it is determined that this preliminary injunction was improperly granted, Defendant will have lost the use of the funds (or remaining funds) that were withdrawn from Account ****8545 during the pendency of this action—*i.e.*, the time value of money. Such losses can readily be compensated by an award of interest on the funds that were frozen for the period during which the funds were frozen. Alternatively, the parties could agree to place the funds during an interest-bearing account until the merits of the action have been determined. If this option is utilized and the Defendant ultimately prevails on the merits, then she would be entitled to receive the accrued interest. Alternatively, if Plaintiff prevails, she would be entitled to receive the accrued interest.

46.    Accordingly, this Court finds that Plaintiff shall post a cash bond or security in the amount of $500.00. Alternatively, if the parties agree that the funds shall be placed in an interest-bearing account until the merits of the action have been determined, then a cash bond shall not be

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

required or may be dissolved and the accrued interest on the funds in the account will be disbursed in

accordance with the further Order of the Court at the conclusion of the action.

### CONCLUSION

For all of the above reasons, it is hereby

ORDERED that Plaintiff Olivia Austin's Motion for Temporary Restraining Order and

Preliminary Injunction filed on August 1, 2018, is hereby GRANTED; and

FURTHER ORDERED that, until further Order of this Court, Defendant Helen Rizzo and

her officers, agents, employees, attorneys, and all those in active concert or participation with her are

immediately restrained and enjoined *pendente lite* as follows:

a.   from using, spending, transferring, disbursing, diverting, encumbering, collateralizing, pledging, releasing, and/or otherwise disposing of any funds or assets received, withdrawn, taken, or derived from the Bank of America account ending with ****8545 (hereinafter "Bank of America account") as described in the Verified Complaint filed in this action; and

b.   from using, releasing, transferring, encumbering, or collateralizing any funds or assets received, withdrawn, taken, or derived from said Bank of America account to pay, reimburse, or secure the payment of Defendant's attorney's fees, costs, or litigation expenses incurred in this action; and

FURTHER ORDERED that Defendant Helen Rizzo and her officers, agents, employees,

attorneys, and all those in active concert or participation with her shall take steps to preserve, protect,

and maintain any funds or assets received, withdrawn, taken, or derived from said Bank of America

account;

FURTHER ORDERED that Plaintiff Olivia Austin shall post a cash bond or security in the

amount of $500.00 within ten (10) business days after notice of entry of this Order. Alternatively, if

the parties agree that the funds shall be placed in an interest-bearing account until the merits of the

action have been determined, then a cash bond shall not be required or may be dissolved and the

accrued interest on the funds in the account shall be disbursed in accordance with the further Order

of the Court at the conclusion of the action; and

      AND IT IS SO ORDERED!

                                           _____
                                           J. Cordell Maddox, Jr.
                                           Presiding Circuit Court Judge

_____, South Carolina.

This _____ day of _____, 2018.

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457

ELECTRONICALLY FILED - 2018 Dec 07 4:34 PM - BEAUFORT - COMMON PLEAS - CASE#2018CP0701457



Beaufort Common Pleas

**Case Caption:**   Olivia Austin , plaintiff, et al VS Helen Rizzo

**Case Number:**   2018CP0701457

**Type:**           Order/Other

So Ordered

s/ J. Cordell Maddox Jr.

Electronically signed on 2018-12-07 16:12:40     page 22 of 22

040337

# SOUTH STATE BANK

P.O. Box 118068 / Charleston, SC 29423
SouthStateBank.com / (800) 277-2175



Temp-Return Service Requested

Page:
Statement Date: **02/28/2019**
Primary Account: **XXXXXXXXXXXX8816**
Period: 01/31/19 to 02/28/19





040337  0.4500  AV  0.383          TR00154

SCST

OLIVETTI MCCRAY & WITHROW LLC
ESCROW ACCOUNT
PO BOX 7906
HILTON HEAD ISLAND, SC 29938-7906

Flexible, time-saving ways to access your accounts:

- eStatements
- BillPay
- Alerts
- Bank to Bank Transfers
- Mobile Banking with Mobile Deposits

## Summary Of Account

| Account Name | Account Number | Beginning Balance | Ending Balance |
|---|---|---|---|
| Money Market Account | XXXXXXXXXXXX8816 | 136,572.52 | 136,644.36 |

## Money Market Account                    Account: XXXXXXXXXXXX8816

### Account Activity

| Date | Description | Credits | Debits | Balance |
|---|---|---|---|---|
| 01/31 | Beginning Balance | | | 136,572.52 |
| 02/28 | Interest | 71.84 | | 136,644.36 |
| 02/28 | Total | 71.84 | 0.00 | |

### Interest

| Date | Description | Amount |
|---|---|---|
| 02/28 | Interest Paid This Period | 71.84 |

Annual Percentage Yield Earned: 1.21%. Interest earned this Period: 71.84 (16 days). Interest Paid 2019: 71.84
We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.



Member
FDIC

## Important Information About Your Account

Unless we receive notice of any unauthorized or missing signature on any enclosed item or alteration of any enclosed item in this statement within 14 days, we will consider this statement and enclosures to be correct.

**What To Do If You Think You Find A Mistake On Your Ready Reserve and / or Automatic Cash Reserve Statement**

If you think there is an error on your statement, write to us at:

**South State Bank    Attn: Loan Operations    PO Box 40008
North Charleston, SC 29423**

In your letter, give us the following information:

1. **Account Information:** Your name and account number.
2. **Dollar amount:** The dollar amount of the suspected error.
3. **Description of problem:** If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

1. We cannot try to collect the amount in question or report you as delinquent on that amount.
2. The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
3. While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
4. We can apply any unpaid amount against your credit limit.

**In case of errors or inquiries about your Electronic Transactions on your personal account only.**

Please call us at:
**1-800-277-2175**

or write to us at:
South State Bank, Reg. E Dept., 950 John C. Calhoun Dr., Orangeburg, SC 29115

If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, we must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number.
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 days to do this, we will apply a provisional credit to your account in the amount you think you have been charged in error, so you will have use of the money during the time it takes us to complete our investigation.

### Documentation and Confirmation of Transfers

If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you can call us at 1-800-277-2175 to find out whether or not the deposit has been made.

## Account Reconciliation

Month _____ 20_____

This form is provided to help you balance your bank statement. Match enclosed checks, charges, deposits, and withdrawals with the items in your register.

Write in your register all items which appear on this statement but have not been listed in your register. Example: Ready Reserve transactions, automatic payments, automatic transfers, interest credits, service charges.

**Check/Withdrawals not deducted**

| Date | | Amount | |
|------|--|--------|--|
| | | $ | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Total Checks/Withdrawals not deducted | | $ | |

**Deposits not credited**

| Date | | Amount | |
|------|--|--------|--|
| | | $ | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Total Deposits not credited | | $ | |

**Balance Computation**

| Add the following items | Amount | |
|-------------------------|--------|--|
| Checking balance shown on this statement | $ | |
| Savings balance shown on this statement | | |
| Total deposits not credited | | |
| Subtotal | $ | |
| Subtract total checks/withdrawals not deducted | | |
| Total | $ | |

This balance should agree with your records.

**SCST** (Rev. 10/2017)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:                                    )        Case No.  19-01303-jw
                                          )        Chapter 13
Helen Marie Rizzo,                        )
                                          )
                    Debtor.               )
                                          )
_____   )

## CERTIFICATE OF SERVICE

I hereby certify that on this _13_ day of May, 2019, I served a copy of the Notice of
Motion, Motion to Modify Stay, Certification of Facts, and an Affidavit of Service on the below-
listed parties, by depositing same in the United States Mail with sufficient first-class postage
affixed and addressed as indicated below:

Helen Marie Rizzo
3 Wind Flower Way
Hilton Head Island, SC 29926

Michael Glen Matthews, Esq.
2015 Boundary St., Suite 319.
Beaufort, SC 29902

James M. Wyman, Trustee (via ECF)
PO Box 997
Mt. Pleasant, SC 29465-0997

                                          Brittany Walker, Paralegal to
                                          MAGALIE A. CREECH
                                          District Court ID No. 10871
                                          Finkel Law Firm LLC
                                          Post Office Box 41489
                                          Charleston, South Carolina 29423
                                          (843) 577-5460
                                          mcreech@finkellaw.com